# CASES ARGUED AND DETERMINED

IN THE

# SUPREME COURT

OF THE

## State of South Dakota

---

### COLE v. BAKER.

1. Limitations do not begin to run against the claim of a principal, for money or property received by his agent as such, until there has been an accounting or a demand therefor, and a refusal by the agent.

2. Where an agent for the sale of securities tenders them, with his principal's consent, for town lots, but without such consent, takes the deeds in the name of a third party, the agency will not be terminated, so as to set limitations running against the principal's claim for the value of the securities, until he has received a deed to the lots from such third party.

3. Where an agent, in trading for certain lots for his principal, took deeds thereto in the name of a third person, without the principal's consent, the mere receipt and retention of such deeds and the abstracts of title to the lots was not such a receipt and retention of benefits as would constitute a ratification of the transaction.

(Opinion filed July 2, 1902.)

Appeal from circuit court, Minnehaha county. Hon. JOS. W. JONES, Judge.

Action by Maggie Cole against W. L. Baker to recover the value of a certain promissory note alleged to have been converted by defendant. From a judgment in favor of defendant, plaintiff appeals. Reversed.

*Joe Kirby* for appellant.

*R. W. Parliman*, for respondent.

CORSON, J. This is an appeal from a judgment upon a directed verdict. The action was brought to recover the value of a promissory note for $1,100, secured by a mortgage on real property, which is alleged to have been converted by the defendant. In the answer, the defendant, among other defenses, pleaded the statute of limitations, and it is assumed on the part of the appellant that the verdict was directed on the ground that the plaintiff's evidence conclusively proved that the action was barred by the statute. It was shown by the evidence that the plaintiff and her husband for a number of years prior to the year 1892 resided in Sioux Falls, and that about that time they removed to Indiana. It is further shown that prior to the time they removed from Sioux Falls the defendant, who was a resident of the said city, had transacted some business for them; and, after they removed therefrom, continued to act as agent in collecting rents and attending to other business of the plaintiff in that city. At the time the plaintiff and her husband removed from the said city the plaintiff held a note executed by one Gilbert for $ ,100, and the mortgage given to secure the same, which mortgage was subsequent and subject to a prior mortgage of $2,200. The plaintiff, being de-

sirous of disposing of this note and mortgage, authorized the defendant to sell the same for $500 or $600 in cash, or trade it for certain real property. To this letter the defendant replied on February 21, 1894, in which he stated that it would be difficult to get any one to make an offer for the note. He further stated that he might possibly be able to trade the note for a quarter of a block (describing it) and asks: "Would you consider such a trade? If you will send up the Gilbert note. I will try very hard to get him to pay the interest, as well as the back taxes." There was some further correspondence, resulting in the plaintiff forwarding the note, indorsed by her, and the mortgage, assigned, with the name of the assignee in blank. On the 24th day of October, 1894, the defendant executed a satisfaction of the mortgage forwarded to him by the plaintiff; and in April, 1895, the plaintiff's husband came to Sioux Falls and demanded a settlement of the matter by the defendant. The correspondence is voluminous, but, in the view we take of the case, it will not be necessary to insert the same in this opinion. No settlement seemed to have been made, and, so far as the evidence discloses, the plaintiff has never received any deed or money or any other consideration for her note and mortgage. This action was commenced in March, 1901.

It is contended on the part of the appellant that the court erred in directing a verdict in favor of the defendant, and in this contention we think the appellant is right. It is very clear from the evidence that the defendant was employed by the plaintiff as her agent to negotiate the sale of the Gilbert note and mortgage; that he undertook to make the sale; that the plaintiff forwarded to him an assignment of the mortgage,

in which the name of the assignee was left blank; that he filled the blank with his own name, and subsequently executed a release of the mortgage; that the two lots that he claimed to have received for the note and mortgage were never conveyed to the plaintiff; and that she has never received any consideration for her note and mortgage, and as late as April 4, 1895, the transaction was not closed between them, as appears by the following letter written by the defendant of that date: "Give me Faircloe's address, and I will try and get the deed for you." It does not appear from the evidence that the defendant was authorized to have the title of the lots conveyed to Faircloe, and, until the plaintiff secured a deed from Faircloe to the plaintiff, the transaction could not be said to be terminated. A few days later, as we have seen, the plaintiff called upon the defendant, and demanded a settlement of this transaction. It is insisted on the part of the respondent that the agency of the defendant was terminated when he sent the plaintiff an abstract of title and the deed to the lots in the name of Faircloe; but the agency was not terminated, in any event, until the defendant had procured a deed from Faircloe to the lots claimed to have been received as a consideration for the note and mortgage, as the defendant, so far as the evidence discloses, was never authorized by the plaintiff to have the lots conveyed to Faircloe.

It is claimed on the part of the defendant that the plaintiff ratified the act of the defendant in taking a deed to the lots in the name of Faircloe, but there was a conflict in the evidence upon this question, and the defendant, by his last letter in the correspondence, seemed to have recognized the fact that it was his duty to secure a deed from Faircloe to the plaintiff.

It is further insisted on the part of the respondent that the plaintiff has retained the benefits of the transaction, thereby ratifying the acts of the defendant. But it is somewhat difficult to understand what the plaintiff has received and retained, for, so far as the record discloses, she has no title to the lots, and it is not claimed that she has ever received any other consideration, and her mortgage has been released of record by the defendant. Certainly this contention on the part of the defendant is untenable.

Clearly, the agency was not terminated for any of the reasons specified in sections 4006, 4007, Comp. Laws, and could only have been terminated by obtaining a deed from Faircloe to the plaintiff for the property claimed to have been taken in exchange for, or purchased with the proceeds of, the note and mortgage, and accepted by her. The defendant, being an agent, the transaction was not terminated until he had accounted for the note and mortgage received by him; and the statute would not commence to run until he had so accounted, or a demand had been made therefor.

Mr. Mechem, in his work on agency, says: "No action can ordinarily be maintained against an agent for money received by him for his principal until after a demand has been made upon him for its payment, with which he has refused or neglected to comply. * * * As a general rule, in such cases it may be presumed, as it has been said, that payment has been delayed by reason of the want of safe and convenient means of transmission, or of some other good and sufficient cause, and that the recipient of the money, still considering himself entitled to no more than enough to reasonably compensate him for his services in collecting, will pay it over on demand."

Mechem, Ag. § 531.   Again, in section 533, he lays down the
following rule:   "Statutes of limitation begin to operate only
when a right of action has accrued.   The determination, there-
fore, of the question when the statute begins to run against
the principal, depends upon the other question of the time
when his right of action has accrued.   As has been seen, the
general rule, subject to certain exceptions already noted, is that
the right of action does not accrue until a demand has been
made, with which the agent has refused or neglected to com-
ply.   It is therefore the general rule that the statute of limita-
tions begins to operate upon a claim against an agent for
money or property received by him only from the time when
he has rendered an account showing a balance due from him,
or when a demand has been made upon him, and he has refused
or neglected to account."   Id. § 533.   These views of the
learned author are sustained by a large number of authorities
cited by him.   The rule seems to be a proper one, and should
be applied in this case.

In any view of the case, we are of the opinion that the
claim of the plaintiff was not barred by the statute of limita-
tions, and that the learned circuit court was in error in direct-
ing a verdict for the defendant.   The judgment of the circuit
court is reversed, and a new trial ordered